**J. Gary BLACK, Plaintiff,**

v.

**The CITY OF AUBURN, ALABAMA; the Public Safety Department, Police Division, of the City of Auburn, Alabama; Jan Dempsey, Mayor of Auburn, individually and in her official capacity; O. Clyde Prather, Director, Public Safety Department, City of Auburn, Alabama, individually and in his official capacity; Douglas J. Watson, Auburn City Manager, individually and in official capacity; Edwin Downing, Auburn Police Chief, individually and in his official capacity; John Lockhart, Captain, individually and in his official capacity; Jerald Sparks, Sergeant, individually and in his official capacity; William Ramsey, Sergeant, individually and in his official capacity, Defendants.**

Civ. A. No. 92–D–1610–E.

United States District Court,
M.D. Alabama,
Eastern Division.

July 14, 1994.

Alvin T. Prestwood, James M. Sizemore, Jr., Montgomery, AL, for plaintiff.

Arnold W. Umbach, Jr., Opelika, AL, John W. Hargrove, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

De MENT, District Judge.

This matter is now before the court on the defendants' motion for summary judgment and brief in support thereof, filed on February 25, 1994. The plaintiff responded with a brief in opposition on March 14, 1994. The defendants filed a reply brief on March 25, 1994. On May 27, 1994, the defendants filed supplemental authority to which the plaintiff responded on June 16, 1994.

Also, before the court is the plaintiff's motion for partial summary judgment, which was filed on February 25, 1994. The defendants filed a brief in opposition to the plaintiff's motion on March 14, 1994, to which the plaintiff replied on April 18, 1994.

**FACTS**

Plaintiff J. Gary Black, at all times material to this lawsuit, was employed by the City of Auburn ("the City") as a municipal law enforcement officer within the meaning of *Code of Alabama* § 11-43-182.[1] Until May 28, 1992 when he was demoted, Black served the City as a Police Lieutenant.

The City is a municipal corporation, which operates with a council-manager form of government. At all times relevant to this action, defendant Jan Dempsey was the Mayor; defendant Douglas J. Watson was the City Manager; defendant O. Clyde Prather was the Director of the Department of Public Safety, who served as the "department head" to the police division of the Department of Public Safety; defendant Edwin D. Downing was the Chief of Police; defendant John Lockhart was a Captain in the police division and Black's immediate supervisor; and defendants Jerald Sparks and William Ramsey were sergeants in the police division.

During October and November 1990, the City hired five female police officers. Afterwards, Chief Downing held staff meetings for supervisors in which, in sum or in substance, the participants discussed that as a result of hiring of female officers, supervisors were going to have to "quit cussing and carrying on like we had done before" so as to avoid civil liability for sexual harassment. (Black dep. at 80.) On February 25, 1991, Black, in his capacity as a Lieutenant of the police division, attended a seminar on sexual harassment in the workplace. In addition, during November 1991, Black attended liability training during which a supervisor's responsibilities with regard to sexual harassment were discussed.

On January 10, 1992, Chief Downing informed Black that several sexual harassment complaints had been filed against him, explained to Black the nature of those complaints, and identified the individuals who filed the complaints. The sexual harassment complaints charged Black with using the terms "bitch," "whore," and "hen" to refer to woman and with using the expressions "fuck"

---

1. Section 11-43-182 provides that: "Every municipality shall establish, separately or jointly, a civil service merit system governing the appoint- ment, removal, tenure and official conduct of municipal law enforcement officers." Ala.Code § 11-43-182 (1989).

and "slinging it"[2] in sexual manner toward women employed by the police division. In addition, Black was accused of telling off-color jokes during roll call and briefings using the word "pussy." After being apprised of the complaints, Black responded to the complaints in writing.

On January 16, 1992, Chief Downing and Captain Lockhart suspended Black with pay pending the completion of an internal investigation of the sexual harassment complaints. At that time, Black was instructed not to discuss the investigation with other members of the police department who were involved in the incidents in question. On February 24, 1992, at the completion of the investigation, Chief Downing and Captain Lockhart met with Black and provided him with copies of witness statements collected during the investigation. Black responded on the record at the meeting to those statements.

On February 26, 1992, Black met with Chief Downing, Captain Lockhart, and Clyde Prather. At that time, Black was given a signed memorandum from Captain Lockhart to Chief Downing, which recommended that Black be suspended without pay for thirty days, demoted from the rank of Lieutenant to Patrol Officer, and undergo counseling with a licensed psychologist.

A disciplinary hearing was set for March 24, 1992. On that date, Black was present and ready to proceed in defense of the charges against him. The City moved for and was granted a continuance of the hearing. At that time, the City also added the charges of unbecoming conduct, immoral conduct, lack of courtesy, and lack of respect to supervisory personnel officers and associates to the charges pending against Black.

Thereafter, on April 16, and April 24, 1992, a hearing was held before Dr. Roger S. Wolters, who was appointed as an independent arbitrator pursuant to City personnel policy. Prior to the hearing, Black submitted a list of persons to Chief Downing requesting the presence of those persons at the hearing, but complains that the City failed to secure the presence of those department employees listed. After hearing all of the evidence, including the direct and cross-examination of witnesses by counsel for both the City and Black, Dr. Wolters issued a report affirming the disciplinary action recommended by Mr. Prather, Chief Downing, and Captain Lockhart. On May 28, 1992, City Manager Douglas J. Watson issued a letter to Black imposing the disciplinary measures that were previously recommended, suspension without pay for thirty days, demotion from Lieutenant to Patrol Officer, and psychological counseling. Black's appeal to the Auburn Municipal Appeals Board was denied.

As a result of the disciplinary actions taken against him, Black charges in his complaint that the defendants deprived him of his constitutional rights to substantive due process, to procedural due process, to equal protection of the law, and to freedom of speech, under color of state law and in violation 42 U.S.C. § 1983. Black also charges that the defendants conspired to retaliate against him for his comments concerning the Police Division's S.W.A.T. team and retaliated against him by harassing him with bad faith enforcement of the City's sexual harassment policies, and in so doing, conspired to violate his constitutional rights under color of state law in violation of 42 U.S.C. § 1985. Lastly, Black charges that the defendants negligently failed to prevent the conspiracy to deprive him of his constitutional rights under color of state law in violation of 42 U.S.C. § 1986.

## SUMMARY JUDGEMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

2. The term "slinging it" evidently refers to sexual intercourse. (Defs.' Exh. 18 at 26.)

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## DISCUSSION

### I. *Due Process of Law*

#### A. *Substantive Due Process*

■ In *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994), the Court of Appeals for the Eleventh Circuit held that "areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because 'substantive due process rights are created only by the Constitution.'" *McKinney,* 20 F.3d at 1556 (citing *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 515–16, 88 L.Ed.2d 523 (1985)). The court further held that substantive due process rights differ from procedural due

process rights in the manner in which a violation of those rights occur.

A violation of a substantive due process right, for instance, is complete when it occurs; hence, the availability *vel non* of an adequate post-deprivation state remedy is irrelevant. Because the right is "fundamental," no amount of process can justify its infringement. By contrast, a procedural due process violation is not complete "unless and until the State fails to provide due process." In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.

*Id.* at 1557.

Black has alleged that the disciplinary actions taken against him as a merit system employee violate state employment law. According to his brief in opposition to the defendants' motion for summary judgment, he alleges that the City did not comply with the established personnel policies for City employees, which have the force and effect of a state statute. (Pl.'s Br. in Opp. at 7.) Black further argues that the defendants participated in illegal conduct by demoting him instead of terminating him or just suspending him when demotion was not specifically listed as a possible disciplinary alternative.[3] (*Id.*) The court finds that the plaintiff's allegations of substantive due process relate solely to public employment law. In *McKinney,* the court held that public employment law "remain[s] largely outside the scope of substantive due process jurisprudence." *Id.* at 1556. Based on the holding of the Eleventh Circuit in *McKinney,* the court finds that summary judgment in favor of the defendant is due to be granted as to the plaintiff's claim that the defendants violated his right of substantive due process.

---

**3.** The court does not agree with the plaintiff's assertion that the City's only options in disciplining employees are termination and suspension. As noted by the plaintiff in his brief, the City's personnel policies outlined "progressive disciplinary actions" that could be taken if the need to discipline an employee arose. (Pls.'s M. for Part.Summ.J.Exh. 1 at 14–18.) Having estab-

lished that, the court finds that it is nonsensical to argue that the City violated a city law by demoting an employee instead of terminating or, in addition to, suspending him. It appears clear to the court that the City, as every other employer, are, and should be, allowed a wide range of alternatives when dealing with employees.

## B. *Procedural Due Process*

■ To establish a deprivation of procedural due process, the plaintiff must establish that he holds a constitutionally protected interest in life, liberty, or property, that there has been a governmental deprivation of that interest, and that the procedures accompanying the deprivation were constitutionally inadequate.

> It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property. More specifically, the Supreme Court has explained that a "tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before a state or state agency may terminate an employee.

*McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir.1994) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544–46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985)). The Supreme Court has described the "'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Loudermill*, 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971)). A predetermination hearing need not be elaborate. *Id.* 470 U.S. at 544–46, 105 S.Ct. at 1495. In sum, due process requires that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* (holding that to require more than that would be to "intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee").

■ Both parties agree that Black has a constitutionally protected property interest in his continued employment as a police officer and cannot be discharged without cause. Therefore, the court's analysis will focus on whether Black had notice of the charges against him and whether Black had a sufficient opportunity to respond to the charges.

On January 10, 1992, Chief Downing informed Black that several complaints of sexual harassment had been filed against him and explained to Black the nature of those charges. Black was allowed to respond in writing to those charges. On January 16, 1992, Chief Downing and Captain Lockhart suspended Black with pay and informed him that he was not to discuss the charges against him while an internal investigation was ongoing. On February 24, 1992, Chief Downing and Captain Lockhart met with Black and provided him with copies of the witness statements collected in the investigation of the sexual harassment complaints. Black was allowed to respond on the record at that time to the charges and statements against him.

On February 26, 1992, Black met with Chief Downing, Captain Lockhart, and Clyde Prather and was given a copy of a memo from Lockhart to Downing which recommended that Black be demoted, suspended without pay, and undergo counseling with a licensed psychologist. A full disciplinary hearing was held before Dr. Roger S. Wolters, a neutral and unaffiliated hearing officer, in regard to the proposed disciplinary measures. At the hearing, which was held over two days, the parties were represented by counsel, presented witnesses, and cross-examined opposing witnesses. Dr. Wolters affirmed the recommended disciplinary actions. On May 28, 1992, the disciplinary actions were imposed. Black was allowed to appeal the disciplinary actions taken against him to the Auburn Municipal Board, which was denied.

■ Black argues that he was denied procedural due process because at the time that he made the comments for which he was disciplined, he was unaware that they were offensive to the female officers who heard them. The court finds this argument to be frivolous. Black had ample notice of the charges against him. The protection of procedural due process provides notice of the charges against an accused after those charges are brought. Procedural due process does not require that, at the time Black

made the comments, he have knowledge that the comments would be offensive. Furthermore, even if due process required such knowledge, Black had attended two seminars on sexual harassment and had been briefed during supervisory personnel staff meetings in regard to the need to be mindful of offensive conduct around female officers. Therefore, even though that type of notice is not required by the Fourteenth Amendment, the court finds that Black had adequate notice that his behavior would reasonably be considered offensive and in violation of the City's policy against sexual harassment.

■ Black argues that he was denied his right to procedural due process because the hearing held in regard to the proposed disciplinary action was not held within the twenty days as proscribed by the City's personnel policy. The court finds that procedural due process does not require that a hearing be held within a twenty-day period, but within a reasonable time. Furthermore, the court finds that noncompliance with personnel policies is not a per se denial of procedural due process. The underpinnings of procedural due process are notice and a fair hearing. The court finds that they were present in this case, and that Black was not prejudiced to the point of a deprivation of procedural due process because the hearing on the charges against him was had a few days outside the twenty-day time period as required by the City.

■ Black alleges that the proceedings were biased against him and that he was denied an impartial tribunal. In order to prevail as to a claim of bias by the presiding officer, Black must prove actual bias by the presiding officer. *Holley v. Seminole County Sch. Dist.,* 755 F.2d 1492, 1497 (11th Cir. 1985). No evidence has been submitted that Dr. Wolters, the hearing officer, was biased in any way. Instead, Black argues that the investigating officer, Sergeant Ramsey, was biased because Ramsey could potentially have benefitted from Black's termination or demotion. The court finds that the alleged bias of an investigating officer is irrelevant to the fairness of a disciplinary hearing and has no bearing on whether Black was denied his right to procedural due process.

■ Black also argues that his right to procedural due process was violated because the City did not require the presence of Black's witnesses at the disciplinary hearing after Black had requested that the City ensure that a list of officers be present. The court disagrees. Although Black is correct in arguing that the right to call witnesses is basic to a fair hearing, Black is incorrect in stating that it was the City's responsibility to secure its employee's presence as Black's witnesses. The City would have been wrong to prevent City employees from participating in the hearing, but Black had to do more than give the City a list and ask them to have those persons at the hearing. If he desired certain persons to testify at the disciplinary hearing, it was incumbent on Black to secure their presence.[4]

■ Lastly, Black alleges that his right to procedural due process was denied because he was not allowed to discuss the charges against him during the internal investigation of the sexual harassment complaints brought against him. The court disagrees. Procedural due process required that Black receive notice of the charges against him and have an opportunity to respond to them. Black had ample notice of the charges against him for sexual harassment. Black was also provided with numerous opportunities to respond to those charges both in writing and orally. The court finds that limiting Black's access to the individuals involved in a dispute, during an internal investigation, in no way infringes on Black's right to procedural due process. It appears to the court perfectly reasonable, during an internal investigation, to limit the access of the employee being investigated to the witnesses in the investigation in order to insure

---

**4.** It is unclear from the pleadings whether Black had the use of the City's subpoena power to compel the attendance of witnesses at the disciplinary hearing. However, at the very least, when requesting Chief Downing to have police division personnel present at the hearing, Black should have summarized the expected testimony of those witnesses, so that a determination could be made whether or not their testimony was material and relevant.

**1548**

that the investigation results in the most accurate and complete conclusion possible.

Procedural due process requires that in a "pre-termination" hearing that a party be given notice of the charges against him and an opportunity to respond to them. In this case, the court finds that plaintiff Black was provided with a sufficient "pre-disciplinary" hearing, had ample opportunity to understand the charges against him, and had numerous opportunities to respond to those charges. Therefore, summary judgment in favor of the defendant as to the procedural due process claim is due to be granted.

## II. Equal Protection

The Equal Protection Clause is violated when "similarly situated persons are treated differently and that different treatment is not rationally related to a legitimate state interest." *Johnson v. City of Tarpon Springs*, 758 F.Supp. 1473 (M.D.Fla.1991) (citing *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); *see Bass v. City of Albany*, 968 F.2d 1067, 1070 (11th Cir.1992). "The Equal Protection Clause only guarantees like treatment to persons similarly situated." *Wulf v. City of Wichita*, 644 F.Supp. 1211 (D.Kan.1986) (citing *Rostker v. Goldberg*, 453 U.S. 57, 79, 101 S.Ct. 2646, 2659, 69 L.Ed.2d 478 (1981)), *aff'd in part and rev'd in part*, 883 F.2d 842 (10th Cir. 1989). Black argues that he was denied equal protection of the law because other officers in the department used bad language and were not similarly punished. There is no evidence that the language used by other employees of the police division was similar or as frequent as that of Black. Cursing on occasion is very different than repeated derogative, profane, and obscene references to women. Moreover, there is no evidence that any officer of comparable rank to Black used the language reportedly used by Black or with the same regularity. The court finds that Black has not submitted evidence of similarly situated persons being treated differently than he was treated.

Black also argues that the his right to equal protection was violated because he was singled out and selectively

prosecuted. The court disagrees. The Equal Protection Clause is not violated in cases of selective prosecution unless the prosecution was based on improper motives, such as bad faith, race, religion, or the exercise of constitutional rights. *Bass,* 968 F.2d at 1070. Black argues that he was prosecuted in bad faith due to his making critical comments concerning the S.W.A.T. team. However, Black submitted no evidence that others, who had been complimentary of the S.W.A.T. team and who engaged in the same sexual harassment as Black, were not prosecuted. In addition, although Black may have made critical comments about the S.W.A.T. team, there is no evidence that members of the S.W.A.T. team, who participated in the investigation of sexual harassment claims against Black, were either overzealous in their investigation of Black or acted improperly during the investigation. Moreover, there has been no allegation that Dr. Wolters, the hearing officer, was biased against Black. Black has submitted no evidence that the City was motivated by improper considerations, such as race, religion, or bad faith, in instituting the investigation that resulted in Black being disciplined.

In sum, there is neither any evidence that other similarly situated officers were treated differently nor is there any evidence that the prosecution or investigation was the product of constitutionally improper motives. Because there is insufficient evidence from which a genuine issue of material fact may arise, the court finds that summary judgment in favor of the defendants as to the plaintiff's claim alleging a violation of the Equal Protection Clause is due to be granted.

## III. Freedom of Speech

To survive a motion for summary judgment regarding the free speech claim, the plaintiff first must show that he engaged in protected free speech, and that the speech was a matter of "public concern." *Kurtz v. Vickrey*, 855 F.2d 723, 726 (11th Cir.1988). In addition, the plaintiff must show that his interest in making the comments outweigh the City's interest in promoting the effective and efficient fulfillment of the city's public responsibilities. *Pickering v. Board of*

*Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968); *Busby v. City of Orlando,* 931 F.2d 764, 774 (11th Cir.1991). Finally, to survive a motion for summary judgment, the plaintiff, after proving that he engaged in protected speech and that his interests outweigh those of the city, Black must show that the constitutionally protected speech was a substantial motivating factor in any adverse employment action taken against them. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

▆▆▆ Black alleges that the City retaliated against him for making critical remarks about the S.W.A.T. team. More specifically, Black alleges that he made statements concerning members of the S.W.A.T. engaging in drunken brawls at local bars and driving vehicles with expired license tags. "Whether an employee's expression may be characterized as on a matter of public concern 'must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" *Green v. City of Montgomery,* 792 F.Supp. 1238, 1250 (M.D.Ala. 1992) (quoting *Rankin v. McPherson,* 483 U.S. 378, 384–86, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987)). Speech is only a matter of public concern if it relates to a "matter of political, social, or other concern to the community." *Kurtz v. Vickrey,* 855 F.2d 723 (11th Cir.1988) (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983)). An employee's private or personal grievance may not be transformed into a matter of public interest by invoking some supposed communal relevance. *Kurtz,* 855 F.2d at 727 (citing *Ferrara v. Mills,* 781 F.2d 1508, 1516 (11th Cir.1986)). Black alleges that his comments regarding the S.W.A.T. team were matters of public concern because the remarks could be interpreted as comments on the proficiency of the S.W.A.T. team. Considering the facts in a light most favorable to the plaintiff, the court finds that the plaintiffs' speech was not a matter of public concern.

However, assuming *arguendo* that the speech was a matter of public concern, two prongs remain in the determination of whether the plaintiffs' First Amendment rights have been violated. The plaintiff must prove that his interest in exercising his right to freedom of speech outweighs the City's interest in running an efficient and effective police division. Also, the plaintiff has a duty to show that the exercise of the freedom of speech was the substantial motivating force behind the investigation and his subsequent discipline. Even if Black can prove that his interest in the relevant speech outweighs the City's interest in running an efficient and effective police division, which the court believes he cannot do, the court finds that the speech was clearly not a substantial motivating factor behind the investigation or discipline. The court finds that there is no evidence before the court which would indicate that the impetus behind the investigation was anything other than the sexual harassment complaints.

In addition, Black argues that the defendants seek to restrict his use of "admittedly rough" language in violation of his right to freedom of speech. The court disagrees. Repeated derogatory and indecent remarks to and about women, to which the plaintiff admits, in no way adds to the public discourse, and indeed, creates a hostile work environment in violation of the law. 42 U.S.C.A. § 2000e–2(a)(1) (1981); *see Meritor Savings Bk. v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (holding that hostile work environments may result in violations of Title VII); *see also Harris v. Forklift Systems, Inc.,* —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (holding that an employee may recover under Title VII for a work environment that a reasonable person would find hostile or abusive and need not prove serious affect to an employee's psychiatric well-being). The speech for which Black was disciplined, due to its creation of a sexually hostile work environment, is clearly not a matter of public concern. The court finds this argument to be frivolous and such conduct to be abhorrent to the profession of law enforcement.

Furthermore, Black argues that the Chief Downing's instruction to him not to discuss the charges against him with any of the other parties to the internal investigation while the investigation was ongoing violates his right

to freedom of speech. As the court noted earlier, it seems entirely reasonable to limit the communication between parties to an investigation in order to insure the most accurate and efficient investigation possible. The court finds this argument to be frivolous.

In conclusion, Black has failed to enumerate speech that was a matter of public concern. Not having done that, it is not necessary for the court to determine, as a matter of law, whether the Black's interest in making the comments outweigh the City's interest in promoting the effective and efficient fulfillment of the city's public responsibilities, or to determine if the speech was the substantial motivating factor behind the negative employment action taken against him. Thus, the court finds that there is no genuine issue of material fact in regard to Black's freedom of speech claim, and that summary judgment is due to be granted.

### IV. *Conspiracy and Negligence Counts*

Because the court has found that summary judgment in favor of the defendants is due to be granted as to all of the underlying constitutional violations, the court further finds that summary judgment in favor of the defendants is also due to be granted as to both of the counts for conspiracy and the count for negligence.

### CONCLUSION

In sum, it is CONSIDERED, ORDERED, and ADJUDGED that the defendants' motion for summary judgement be and the same is hereby GRANTED. It is further ORDERED that JUDGMENT be and the same is hereby entered in favor of the defendants and against the plaintiff as to all counts and that the plaintiff take nothing by his said suit.

It is further CONSIDERED and ORDERED that the plaintiff's motion for partial summary judgment be and the same is hereby DENIED AS MOOT.

All costs herein incurred be and the same are hereby taxed against the plaintiff, for which let execution issue.