[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 4, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-14647

_____

D. C. Docket 00-00551 CV-N-W

EUGENE A. MANGIERI, M.D.,

Plaintiff-Appellant,

versus

DCH HEALTHCARE AUTHORITY,
BRIAN N. KINDRED, et al.,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(September 4, 2002)**

Before EDMONDSON, Chief Judge, CARNES and SILER[*], Circuit Judges.

EDMONDSON, Chief Judge:

---

[*]Honorable Eugene E. Siler, Jr., U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

Plaintiff Eugene Mangieri, M.D., ("Mangieri") appeals the district court's grant of summary judgment to Defendants DCH Healthcare Authority ("the Authority") and Alabama Orthopedic & Spine Center of Tuscaloosa, P.C. ("AOSC"), dismissing Mangieri's lawsuit under 42 U.S.C. § 1983 against Defendants. We vacate the judgment.

## BACKGROUND

Mangieri owns and operates E.A. Mangieri, M.D., P.C., Anesthesiology and Pain Management ("Mangieri P.C.") in Northport, Alabama. In December 1995, Mangieri P.C. entered into a contract ("the 1995 contract") with the Authority[1], which granted Mangieri P.C. the exclusive right to provide anesthesia services at DCH Northport, a state hospital.[2] The 1995 contract was for a three-year term, from 1 January 1996 to 31 December 1998, and had a provision for automatic renewal provided neither party notified the other of an intent not to renew before 30 June 1998.

---

[1] The Authority is a local government entity and, thus, is subject to § 1983 liability. See Todorov v. DCH Healthcare Auth., 921 F.2d 1438, 1460 (11th Cir. 1991).

[2] Because this appeal comes from the grant of summary judgment to Defendants, we view all facts and draw all reasonable inferences in the light most favorable to Mangieri. See Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). The true facts may prove to be otherwise.

2

In early 1996, Mangieri opposed a proposal by the Authority to move inpatient medical and surgical cases at DCH Northport to DCH Regional Medical Center ("DCH Regional").[3] Mangieri alleges that, after opposing the Authority's plans, he began receiving complaints from the Authority regarding the quality of anesthesia services provided by Mangieri P.C.[4] The Authority gave Mangieri notice on 18 March 1998 of its intent not to renew the 1995 contract. The 1995 contract expired at the end of 1998.

In June 1998, the Authority sought bids for a contract ("the 1998 contract") for anesthesia services for 1999. The contract was awarded to Mangieri P.C., and Mangieri P.C. was given the exclusive right to provide anesthesia services at DCH Northport from 1 January 1999 to 31 December 1999. The 1998 contract had no renewal provision and provided that, when the contract expired, all physicians employed by Mangieri P.C. would relinquish medical staff privileges at all DCH hospitals.

In January 1999, Mangieri moved to table -- pending review by a health care

---

[3]In particular, Mangieri was one of fifty physicians to sign a letter, published in the Tuscaloosa News, which stated the Authority's proposal was "not in the best interests of our patients." Mangieri and other physicians also spoke with Quorum Health Group about a joint venture to purchase DCH Northport from the Authority, a proposal which was reported in local news. Soon after, the Authority abandoned its plans to consolidate inpatient medical and surgical treatment at DCH Regional.

[4]Many of the complaints to the Authority came from doctors at Defendant AOSC.

attorney representing the medical staff -- certain amendments to the medical-staff bylaws proposed by the Authority. The bylaws were tabled, and Mangieri was elected by the DCH Northport staff to serve as chairman of the Medical Staff Bylaws Review Committee. During his service on this committee, Mangieri continued to oppose adoption of the amended bylaws.

DCH Northport and the Authority continued to receive complaints on the quality of services provided by Mangieri P.C. In October 1999, the Authority solicited comments from physicians at DCH Northport about the continued use of Mangieri P.C. Of the twenty-three physicians who responded, six (all members of the AOSC or Obstetrics & Gynecology of West Alabama) opposed the renewal of Mangieri P.C.'s contract. These six physicians performed the majority of surgeries at DCH Northport.

The Authority requested and received proposals for the provision of anesthesia services for the year 2000 from various anesthesiology groups, including Mangieri P.C. In November 1999, the DCH Northport Board awarded the contract ("the 1999 contract") to Anesthesia Services of Birmingham, P.C.

Mangieri filed suit under 42 U.S.C. § 1983 against Defendants. He alleged, among other things, that the Authority, acting in concert with the private AOSC defendants, refused to renew the 1998 contract with his medical group in retaliation

4

for his speaking out about matters of public concern and, therefore, violated his right to free speech under the First Amendment. The district court granted Defendants' motion for summary judgment. The court concluded that, in rejecting Mangieri's bid and letting his contract expire,[5] the Authority had not <u>terminated</u> a "pre-existing commercial relationship," within the meaning of <u>Board of County Commissioners v. Umbehr</u>, 518 U.S. 668 (1996), with a governmental entity but had, instead, merely let the contract run its course.[6]

## DISCUSSION

We review the district court's grant of summary judgment <u>de novo</u>, considering all evidence in the light most favorable to the non-moving party. <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990).

In <u>Umbehr</u>, the Supreme Court concluded that, as with government employees, government contractors are protected by the First Amendment from termination in

---

[5]Mangieri contends that the specific acts of retaliation which formed the basis of this suit were either the November 1999 rejection of his bid or the December 1999 expiration of his contract.

[6]The district court observed in passing that the only act for which a First Amendment claim might arise was the March 1998 decision by the Authority not to renew Mangieri's contract. Mangieri filed a motion to alter or amend the judgment or, in the alternative, to amend his complaint to include the Authority's decision not to renew the 1998 contract as a basis for this lawsuit. The district court denied the motion. Mangieri has not appealed that ruling.

retaliation for the exercise of their freedom of speech.[7] 518 U.S. at 684-86. In doing so, the Court rejected the position that, because an independent contractor has no property interest in his contract with the government, the government may terminate that contract in retaliation for the contractor's exercise of his freedoms of political affiliation and participation under the First Amendment. Id. at 673. At issue in this case is the Umbehr Court's warning about the limited nature of the decision: "Because [the plaintiff's] suit concerns the termination of *a pre-existing commercial relationship* with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship." Umbehr, 518 U.S. at 685 (emphasis added).

Mangieri contends that the district court erred in concluding that the Authority did not *terminate* a pre-existing commercial relationship by either rejecting Mangieri's bid or letting his contract expire. We agree. We cannot conclude, as the district court did, that the absence of an automatic renewal provision in the 1998 contract prevented

---

[7]In a companion case, the Supreme Court concluded that a city council could not condition the continued inclusion of a tow truck company on a call rotation list on that company's political support of members of the council. O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 714-15 (1996). In O'Hare, no contract existed between the city and the tow company. Because the city had previously had a practice of only removing tow companies from the rotation list for cause, the Court concluded the parties had an expectation that their commercial relationship with the city would continue as long as their service was not poor. Id. at 720-21.

the non-renewal of that contract from constituting a "termination" of a pre-existing commercial relationship. Instead, we believe that, by rejecting Mangieri's bid in 1999 and not renewing his contract, the Authority terminated -- that is, caused to end -- a commercial relationship with Mangieri which had been ongoing since at least 1995.

We know that in Umbehr, the contract between the independent contractor and governmental agency did have an automatic renewal provision. Umbehr, 518 U.S. at 671. But in conditioning a governmental contractor's ability to bring an action under § 1983 for a violation of his right to free speech on the presence of an automatic renewal provision, the district court in this case appears to be requiring the contractor to have a property interest in the renewal of his contract with the government; we think this proposition was rejected for free-speech claims in Umbehr. Id. at 673.[8]

The warning in Umbehr noting that the decision does not address the ability of bidders or applicants of new government contracts to bring suit under the First

---

[8]We are guided by precedent about governmental employees in rejecting the Authority's argument that the mere non-renewal of a contract which lacks an automatic renewal clause cannot constitute retaliatory termination. An employee's "lack of a contractual or tenure 'right' to re-employment . . . is immaterial to his free speech claim." See Perry v. Sindermann, 408 U.S. 593, 597-98 (1972); see also Brett v. Jefferson County, Ga., 123 F.3d 1429, 1432 (11th Cir. 1997).

Amendment focuses on the lack of a *pre-existing* commercial relationship between these hypothetical contractors and the government. We cannot conclude that, because the 1998 contract between Mangieri and the Authority lacked an automatic renewal clause and expired according to its own terms, Mangieri had no pre-existing commercial relationship with the Authority springing from his earlier contracts. That Mangieri, from 1995 to 1999, contracted with the Authority to be the exclusive provider of anesthesia services to DCH Northport is undisputed.

This case can be distinguished from McClintock v. Eichelberger, 169 F.3d 812 (3d Cir. 1999). In McClintock, the contractor had had one contract with the government in 1985, another contract in 1992[9], and a vendor-vendee relationship with the governmental agency from 1995 through 1997 when he bid on and was rejected for an unrelated contract in 1997. Id. at 814. The Third Circuit concluded that the contractor was not in a pre-existing commercial relationship with the government because the contractor lacked an *ongoing* commercial relationship with the government. Id. at 816. Instead, in bidding for the contract at issue in McClintock, the contractor occupied the status of a disappointed bidder or applicant for a new governmental contract without a pre-existing commercial relationship with the

---

[9]Both of these contracts were for discrete projects which were fully completed in the same year in which they were contracted.

8

government so as to bring the contractor within the protection of <u>Umbehr</u>.  <u>Id.</u>

In contrast, Mangieri did have ongoing contractual relations with the Authority since as early as 1995.  Furthermore, the services provided under those earlier contracts were of the same kind as the services which Mangieri bid upon and was rejected for in 1999.  In other words, Mangieri had a pre-existing commercial relationship with the Authority for the provision of anesthesia services.  If the contract upon which Mangieri bid had been for the provision of services other than anesthesia services, then it might be that Mangieri would occupy the status of an applicant for a new government contract without a pre-existing commercial relationship with the Authority; that case is not this one, however.

We conclude that Mangieri is not barred by <u>Umbehr</u> from asserting claims for the alleged violation of his First Amendment rights in a suit under § 1983.  We therefore VACATE the judgment and REMAND this case for further proceedings consistent with this opinion.

VACATED and REMANDED.